Thank you, and may it please the Court again, my name is Tracy Staub, and I'm here on behalf of Mr. Nash. And again, this case presents another search warrant issue, and this is why I keep getting the two of them mixed up. Generally, I don't like to spend a lot of time on the facts in an oral argument, but I think in this case the facts are critical, and surprisingly enough for a search warrant affidavit, they're disputed. And so it looked to me as though context in this case was kind of strong, and I'd like you to address it. Nash bragged online that he had sex with a 10-year-old boy and a 14-year-old boy, and said he would swap photos. That's a lot of context for looking for photos of under 18 individuals that had some sexual aspect. Also, my second concern that I'd like you to address is it looked like they didn't even need probable cause to be looking for possession of child pornography. They had probable cause to be looking for evidence of rape, because Nash bragged about having sex with underage boys. I understand that. First, the first question that Nash bragged about having these photos and wanting to swap them, first of all, the only evidence that this is Nash is unreliable. It was retrieved from a profile that is not verified for accuracy. I thought he used his credit card. There was a credit card used. For what was the credit card used for? We don't know. It was not used to purchase this screen name. It could have been somebody else in the same residence or whatever, but nevertheless. How did they – this is something that troubled me about the record. I couldn't quite figure out where this credit card information was discovered and how they tied it to – Well, it was part of his profile on Yahoo. His profile included a name and a post office box address, and then at one point in time he had used a credit card, and that credit card information with Mr. Nash's name was in that profile, was saved in that profile. But you see his profile. Now, how did they get his profile? Whoever registers that screen name puts it in. And so it could be anybody. It's never verified. So I could put your name in? Yes, you could. Yes, you could. And you could do it from anywhere in the world. Why wouldn't that just go to whether there's a reasonable doubt rather than probable cause? Well, because the Ramos case and most of the cases that cite that say that just because we think that he may have committed a crime doesn't necessarily lead to the conclusion that evidence of that crime can be found in his home. And again, in this case, there is no nexus. There's nothing that would tie this one single chat to his home. There's no direct evidence and there's no indirect evidence. There's no – there's no – I've got emails bragging about having sex with underage individuals, people that have computers or are likely to have them in their homes nowadays, and the email kind of piles up there. And that's assuming he's accessing it from his home. Even assuming they have enough to think that this is Mr. Nash. That's assuming he's accessing it from home. And we have no idea if that's the truth. He could be accessing it from work. Why do we have to assume that if the legal issue, I thought, is just is it a fair probability that that evidence would be there? So we don't have to assume it's definitely there. It's just is it a fair probability that that evidence might be at his house? And that's true. But when you look at the evidence in this case, there is nothing connecting his home in Granger to this chat or the evidence of a crime. There's nothing. Well, when you say nothing, you're not including the credit card. And I'm thinking, yeah, you could put in my name and credit card, but you probably – I guess you know my name. You don't know my credit card number. No. And I know that. And that's why I'm saying, assuming we can tie this to Mr. Nash, as unreliable as that information is, there is still nothing that says that he committed this crime at that residence, that there's evidence of this crime at that residence. If there's anything connecting this Granger residence to this crime that was alleged or confessed to, there's nothing. If they were able to trace an IP address, they often do straight back to a computer and say, this chat came from this computer in this residence. Bam. We wouldn't be here. But they never did that. And the registration information was a post office box. So the police didn't even go far enough to confirm that he lived there six months prior. For all we know, he moved. We know nothing. And the fact that the police were able to verify that Ron Nash used that post office box and lived in Granger means nothing. It's a completely innocuous fact. How do we make of the fact that a car registered to him was at that address? That's the same thing, Your Honor. So what – we now know that there's a Ron Nash that uses that post office box and drives a car and now lives at the Granger Street address. But again, we don't know whether he accessed the Internet from that residence, whether there's a computer in that residence, whether there's evidence of a crime in that residence. We don't know any of that. He could be accessing it from work or school or anywhere. He could be accessing it from a prior residence. We don't know. We don't know. So what it boils down to is they think he did the crime. Hence, we search everything he owns and controls. So we're supposed to think it's equally likely that a person who likes to look at an illegal type of dirty picture is as likely to do it from someplace else as from his home? Well, and, Your Honor, I cited in my reply brief several cases from other circuits that do talk about that. They say, you know, when information is being sent to a post office box or when it's just as likely that it could be his work or his school or someplace else, we don't make that leap to search his residence, his castle, his most protected area. Now, he had – do we look at this as a confession? It could be. I mean, I'm not going to – you know, for purposes of the argument, fine. You know, I mean, I'm not going to die on that sword. I'm going to say, even if we look at it as a confession, it's very similar to somebody who confesses to or that we know has sold drugs. If we don't know anything, if there's nothing to tie that person to his home, we still don't get to search his home. And in this case, there's no indirect evidence either. There's no opinion testimony, and there's no testimony that says this person fits a profile or a certain proclivity that we can assume his home would have done these things. If the police catch somebody on the street selling measured quantities of marijuana or cocaine, they can't get a warrant to look at his house for scales or glassine bags or whatever? Oftentimes in that case, they provide the indirect evidence. We know that drug or their storage unit or wherever they do, and that's what they use to go in. In this case, there's nothing. There's nothing. I mean – You mean you think it would really be more persuasive if there was that usual police boilerplate about what usually happens? No. I mean, that's Weber. That's Weber. And Weber said, even if you put it all in there, you've got to tie it to this person. And of course not. I don't think so. But I would have a hard time standing up here making the argument. In this case, it's just not there. And the government is basically asking this Court to indirectly overrule Weber. That's what would have to happen, because there's no direct evidence and there's no indirect evidence tying this crime to that residence. There's nothing. The only thing they have is a suggestion that this person committed a crime six months prior. They didn't do anything during that six months. They didn't do any investigation to try and contact this person online to try and send it off to Yakima, and then Yakima verified some innocuous facts and got a warrant. They can do more than this. And we should require them to do more than this when they're invading our homes. So I'll reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Again, may it please the Court. Stephanie Whitaker from the United States Attorney's Office in Spokane. Respectfully, I feel the need to correct the record. I'm reading directly from the affidavit submitted to the magistrate when the Court was questioning the what was determined from the Yahoo subpoenas in the credit card. What I was able to determine through the first order done to Yahoo was that the person using the screen name WeSuckU3 paid Yahoo through a credit card for some type of service, and that name was Ron Nash, P.O. Box, gives a specific address as well as a telephone number. That was later corroborated through additional subpoenas that identified WeSuckU associated to Mr. Nash at that exact same address with the date of birth and the same telephone number, and that was later corroborated by the Yakima detectives who put that in the affidavit. So the United States does disagree significantly with the facts as they were associated not only to the defendant, but specifically tying him to the computer-related activity at that particular residence. It is not required that the detectives So what you're saying is the affidavit doesn't just tie it to the credit card. It ties it to both the credit card and the residence. As well as a corroborating telephone number and a confirmation that he was still at that address at the time they wished to execute the warrant. It's simply not required, nor is it reasonable to suggest that officers need on computer-related cases such as this to see the defendant on a computer inside his home to know that it is reasonable and there's a fair probability that exists, that evidence will exist inside their home. The nature of this particular chat not only invokes concern over child rape, which was part of the basis of the probable cause, but also the exchange of what he purported to be images taken of one of his victims. That directly, and it also discusses victims in close proximity to the defendant, a neighbor, a child he coaches. It is absolutely not reasonable or not unreasonable for there to be evidence associated at his residence based upon his own statements and the corroboration of that address, phone number, credit card to the defendant. Could you tell me why it's logical to think that there would be some incriminating evidence at the residence? I think it's logical because here you have an individual who's online. He's chatting with like-minded individuals. He's utilizing a computer to do that. He's not only discussing in graphic detail the rape of these children, but also the exchange of images. This is an IP address that you do have to register some form of home address with Yahoo in order to keep that account. This is the address he consistently registered. This is the address that he was still at. He was also referencing children of close proximity to him, a neighbor, a child he coaches. It is not unreasonable to think, and it's not required under the law, that we have an exact location, only that it's reasonable to believe that some evidence of those crimes. I guess what I'm asking about is something that appellant's attorney hinted at, that if you're committing some kinds of crime, you just assume keep the evidence out of your residence, put them in a storage locker if it's dope or something like that. That doesn't foreclose the possibility of all evidence. It doesn't matter what some propensity may be to hide some crucial evidence. That doesn't mean that we can't still recover something in his home of evidence of these crimes, because, again, we're spanning not only child rape, but computer related crimes, and that we can't recover something out of a computer in his home. And it's absolutely reasonable to believe that that computer is going to be maintained in their home, that they're not going to carry it around to different locations to commit their crimes. They're going to go to a place of security. They would have to have a computer at their home. I'm sorry, what? They would have to have a computer at their home. Well, here, obviously, by the registration of the IP address and the communications online, the defendant had access to a computer. It's reasonable to believe that he's going to have those types of communications when he's discussing illegal activity within the privacy of his home instead of a public location. And it's certainly even – even if these chats occurred in a café, it's not unreasonable to – If I were a dope dealer, I think I'd make my deals on the computer at an Internet café. But that doesn't mean that there's not still evidence of that crime associated with his residence. And the law does not require there to be exact premises associated, as long as it was reasonable for the officers to seek evidence in the premises to which they sought. Here, I don't see what the other alternative would have been. Where else would they have searched for evidence except for the home of this individual who was having these chats online? I think – Could you help with something else? I know your time is short. Could you talk about how to distinguish, if you think it should be distinguished, United States v. Weber? Yes, Your Honor. Your Honor, I think that the Weber case is easily distinguished here. In Weber, there was language in there in which they were resting solely upon some expertise language by law enforcement in the affidavit. In addition to that, we're talking about interests that which consisted – a limited interest and consisted in ordering something online. Here, we have much more than that. We actually are not relying on boiler-point language or expert being offered by the affiant. Here, we're relying solely on the defendant's own statements. We're relying not only on the – on some limited interest that occurred a time ago. We're relying upon a defendant's pretty explicit writing. In that one, the person ordered some illegal Internet porn two years ago? I believe it was from a catalog in Weber, Your Honor. We said that's not enough to give a reasonable probability that you'll find – I believe the circumstances there were that the defendant several years prior had ordered from a catalog, that there was no evidence of any other interest, and that the reliance for probable cause rested a great deal upon the expertise of collector language submitted by the affiant, that it was more likely they keep and maintain these items, that when people are interested in these items, that they often keep them over a period of years. Here, we are outside that type of situation. Here, we're talking about an individual within six months who he himself was bragging about the molestation of two young boys and trading those images online. You don't need to rely upon the expertise of an affiant in presenting an argument that it's reasonable to conclude that this individual maintained that interest or have some evidence of those crimes still in his home, and it is separate and apart from Weber in that degree. This is coming from the defendant's own mouth. Was this a confession? I think it certainly can be considered as a statement against interest that holds much more inherent reliability. Here, we have an individual who doesn't know he's being watched. He doesn't know that conversation is going to be read by law enforcement. And in that, with their own statements, carries inherent reliability, I think, in and of itself, certainly sufficient to establish probable cause. Apparently, there's a lot of bragging and lying that goes on in these conversations. What weight should we give to that fact? I think in this particular case, when you have an individual who's talking about multiple occasions, multiple victims, and a desire and a solicitation to trade images, I don't believe that there should be the luxury of questioning when we're talking about the standard of probable cause. I think that we have to assume that when somebody thinks they're in a safe place talking to a like-minded individual, that they're going to be more free to discuss their criminal acts, and certainly did not ever believe that this chat would be read by law enforcement. That carries sufficient to establish probability. What would the implication be for that, for the 18-year-old senior boys in the locker room talking about their conquests among the 16-year-old girls? I think that – well, if you're talking about a 16-year-old girl – What I'm suggesting is that we know that in some contexts involving sexual conduct, there's a lot of false bragging that goes on. Your Honor, but here, when you're looking at the context to which this message was given, and the age of the children, we're not talking about 16- to 18-year-old where age of consent may not be a legal activity, has more of a circumstance around it. It's talking about boastful bragging by high school students. Here you have individuals – The boys in the locker room are confessing to stat rape. I think here you have to look at the context of it to determine its reliability. In this particular circumstance, you're talking about an individual who's bragging and asking another individual about their abuse of his children and lists those occasions, brutal raping of these children, and asking for an exchange of pictures. That is a very different context than I think you have high school students bragging about conquests or, you know, talking about locker room talk. This is a completely different context, and in it bears much more inherent reliability. Even if there's bragging in there, even if the Court wants to assume there's some bravado going into it, the inherent reliability of this type of chat certainly provides sufficient probable cause and I think obligates, absolutely obligates law enforcement to look into it as quickly as they can and to determine if there's more evidence that can be derived based upon the defendant's context, and that was the case here. Thank you, counsel. Just for clarification purposes, the government says that the IP addresses that he registered, he didn't register IP addresses. They're assigned to the computer when he signed up, but they're assigned by Yahoo, and they were never able to trace those IP addresses. So to say that he registered them is not supported in the search warrant affidavit. It's just not there. And again, the government focuses on the nature of the confessions, if you will. It still doesn't get us back to the house, though. I'm sorry, I couldn't hear the last sentence. It still doesn't get us back to his house. There's just nothing there that gets us back to the house. And you'd have to look at Ramos that says the confession of a crime doesn't give you enough to search a home, and you have to look at Weber. In Weber, he ordered this stuff, and they said that's still not enough, and he ordered it much sooner than the six months we're talking about in this case. So we can't get by Ramos, we can't get by Weber in this case, and the search warrant was invalid. Thank you. Why isn't Weber distinguishable? Because it's two years old instead of six months? Boilerplate expertise instead of specific claim by the defendants who have committed a crime? I'm sorry. Why is Weber distinguishable, or why is it not? Why is it not? Distinguishable. Well, actually, I think in this case, the facts are less culpable than they were in Weber. In Weber, he had a package sent to him had been intercepted two years prior, and then he went out and ordered some that were going to be delivered to his home address. And this Court said, you know, that's not enough. We're making inferences upon inferences. And that's exactly what the Court would have to do in this case. They would have to make inferences, first of all, that Mr. Nash was the screen name and final. I'm not going to die on that sword. But they'd also have to make inferences that he contacted or accessed the Internet from his home and inferences that this was the place and inferences that he kept. So we're stacking inferences. Thank you, counsel. United States v. Nash is submitted.
judges: B. Fletcher, Kleinfeld, Gould